United States District Court
Southern District of Texas

**ENTERED**

March 15, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE ALEMAN,                           §
                                       §
        Plaintiff,                     §
                                       §
V.                                     §        CIVIL ACTION NO. 4:20-330
                                       §
ANDREW SAUL,                           §
COMMISSIONER OF THE SOCIAL             §
SECURITY ADMINISTRATION,[1]            §
                                       §
        Defendant.                     §


**<u>MEMORANDUM AND ORDER</u>**

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary

Judgment and Response to Defendant's Motion for Summary Judgment (Document No. 14),

Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 15), and

Defendant's Motion for Summary Judgment (Document No.11).   After considering the cross

motions for summary judgment, the administrative record, and the applicable law, the Magistrate

Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment

(Document No. 11) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 14) is

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration.  The parties consented to the United States Magistrate Judge on April 30, 2020.  (Document No. 10).

GRANTED, and the matter is REMANDED to the Commissioner for further proceedings.

## I.  Introduction

Plaintiff, Jose Aleman ("Aleman") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his applications for disability benefits ("DIB"), and SSI.  Aleman argues that the Administrative Law Judge ("ALJ") committed errors of law when she found that Aleman was not disabled. Aleman seeks an order reversing the ALJ's decision, and awarding benefits, or in the alternative, remanding his claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Aleman was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II.  Administrative Proceedings

On April 13, 2016, Aleman filed for SSI and on April 25, 2016, for DIB claiming he has been disabled since March 27, 2016, due to a broken neck. (Tr. 185-197). The Social Security Administration denied his applications at the initial and reconsideration stages.  (Tr. 64-65, 92-93), Aleman then requested a hearing before an ALJ. (Tr. 182-184).  The Social Security Administration granted his request, and the ALJ held a hearing on October 30, 2018.  (Tr. 30-45).  On December 5, 2018, the ALJ issued her decision finding Aleman not disabled.  (Tr. 9-29).

Aleman sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 182-184). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new

and material evidence and the decision is contrary to the weight of all the record evidence.  After considering Aleman's contentions in light of the applicable regulations and evidence, the Appeals Council, on November 25, 2019, concluded that there was no basis upon which to grant Aleman's request for review.  (Tr.1-8).  The ALJ's findings and decision thus became final.

Aleman has timely filed his appeal of the ALJ's decision.  The Commissioner has filed a Motion for Summary Judgment (Document No. 11).  Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 14).  This appeal is now ripe for ruling.

The evidence is set forth in the administrative transcript/record, pages 1-530.  (Document No. 6).  There is no dispute as to the facts contained therein.

## III.  Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)(quotation omitted).  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  *Id.*  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision.  *Chaparo*

*v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  *Id.* § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [him],

or whether [he] would be hired if he applied for work.

*Id.*  § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is

suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any

substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan*

*v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1.  If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2.  If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;
>
> 3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits  are awarded;
>
> 4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5.  If  the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). Under this

formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that

a disability exists.  If successful, the burden shifts to the Commissioner, at step five, to show that

the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  Once

the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant

to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the

process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.

*Leggett*, 67 F.3d at 563.[3]

---

[3] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017).  Depending on the

In the instant action, the ALJ determined, in her December 5, 2018, decision that Aleman was not disabled at step five. In particular, the ALJ determined that Aleman meets the insured status requirements of the Act through December 30, 2020, and that Aleman has not engaged in substantial gainful activity since March 27, 2016, the alleged onset date (step one); that Aleman's post-surgical cervical spine disorder is a severe impairment, and that Aleman's glaucoma, migraines, and depression and anxiety were not severe impairments (step two); that Aleman does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1 of the regulations (step three); that Aleman has the RFC to perform medium work with the following limitations:

> he can never climb ladders, ropes, or scaffolds.  He can occasionally reach overhead bilaterally, and he can frequently feel with his left upper extremity.  (Tr. 20).

The ALJ further found that Aleman could not perform his past relevant work as a baker (step four); and that based on Aleman's  RFC, age (48), being unable to communicate in English, work experience, and the testimony of a vocational expert, that Aleman could perform work as a dining room attendant, an industrial cleaner, and a laundry worker, and that Aleman was not disabled within the meaning of the Act (step five).  As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as

---

regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017.  The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V.  Discussion

The objective medical evidence shows that Aleman had a growth on the white part of his eye for eight years.  He had it reported in August 2016.  (Tr. 477-483, 476).  Follow up records from the pteryguim excision show that Aleman did well following the excision.  (Tr. 471-475).  Records further show that Aleman was evaluated for glaucoma on April 2, 2018, at the Eye Center of Texas.  The doctor opined that no treatment was necessary.  (Tr. 464-470).  Upon this record, substantial evidence supports the ALJ's determination that glaucoma is a non-severe impairment.

The medical evidence also shows that Aleman has been treated for migraines by Dr. Shahbuddin H. Mukardamwala, M.D..  (Tr. 485-490).  The treatment notes show that at his initial office visit, Aleman complained of headaches, that cause photophobia, phonophobis, and blurry vision.  Aleman stated he has the headaches approximately three or four days a week, and has been having them for six months.  Dr. Mukardamwala prescribed Gabapentin.  At his follow up appointment on March 23, 2018, Aleman reported having a headache twice.  (Tr. 487-488). Likewise, at his April 27, 2018, Aleman reported that his "headaches are better.  They happen about 2-3 times a week" and that the Gabapentin helps with his headaches. The treatment notes that the dosage of Gabapentin had been doubled to counter pain.  (Tr. 485-486).  Upon this record, substantial evidence supports that ALJ's determination that migraines are a non-severe impairment.

The record show that Aleman has not sought treatment for depression and anxiety, and he has not complained of depression and/or anxiety at doctor appointments.  The ALJ assessed Aleman's mental functioning under the "paragraph B" criteria.  The ALJ found that Aleman has no limitations in understanding, remembering, or applying information, interacting with others,

concentrating, persisting, or maintaining pace, and adapting or managing oneself.  Upon this record, substantial evidence supports the ALJ's determination that depression and anxiety are non-severe impairments.

Finally, the records show that Aleman has been treated for cervical spine problems resulting from a fall on March 27, 2016.  Medical records from the Emergency Department at Memorial Hermann Southeast Hospital reveal Aleman went there complaining of neck, and left arm pain.  (Tr. 287-334).  Aleman had localized weakness of the left upper extremity. He had no sensory deficits, and his sensation was intact.   (Tr. 320).  A CT of the brain, face, abdomen, thoracic spine were normal.  (Tr. 323, 327, 328, 450, 454, 455, 456).  Likewise, x-rays of the chest and thoracic spine were normal.  (Tr. 326, 449, 453, 457).  X-rays and a CT of the cervical spine revealed a C6 fracture and C7 fracture.  (Tr. 322, 325, 329, 448, 451, 452).  Because Aleman required surgery, he was transferred to Memorial Hermann Texas Medical Center.  (Tr. 302).

Aleman was admitted to the hospital on March 28, 2106, and discharged the following day.  (Tr. 338-365, 419-442).  Aleman reported neck pain and tingling to the middle four fingers of his left hand and pain in his left forearm.  Sensory deficits were present in the left hand and Aleman presented with altered sensation to light touch on the left arm when examined.  (Tr. 345).  Results of a CT of the neck revealed no abnormalities.  (Tr. 347-348, 444-445).  Aleman had an MRI taken of the cervical spine.  (Tr. 349-350, 446-447).   The radiologist opined:

1.  Comminuted left C6 facet/posterior arch fracture, with grade 1 anterolisthesis of C6 over C7.  Severe left C6-C7 neural foraminal stenosis is present.  No abnormal signal in the spinal cord.

2.  Tiny anterior epidural hematoma from C2 to C3 (series 302 image 9).

3.  Anterior longitudinal ligament tear at C6-C7 (series 401, image 10).

4.  Mild C7 superior endplate edema without fracture.

    5.  Multilevel right asymmetric posterior disc osteophyte complexes, with mild spinal canal stenosis from C4 C5-C6 C7, moderate bilateral neuroforaminal stenosis at C4-C5 and C5-C6, and moderate right neuroforaminal stenosis at C6-C7.

    6.  Interspinous edema extending from the atlantoaxial junction to C6-C7.

Based on the imaging results, and physical examination results showing left hand tingling and weakness and decreased sensation in the left 3, 4, and 5 fingers, Dr. Karl Schmitt opined Aleman had a left unilateral C6/7 facet fracture with associated left triceps weakness. Dr. Schmitt operated on the fracture. (Tr. 363-364). A post surgery CT of the cervical spine revealed "satisfactory appearance of internal fixation of left C6-C7 fracture with left laminar hook and right posterior stabilization rods. 2. Resolution of anterolisthesis of C6-C7 with restoration of anatomic cervical alignment. 3. Expected postsurgical subcutaneous emphysema and soft tissue swelling." (Tr. 351, 442). Aleman's discharge note states, in pertinent part, that he could increase activity as tolerated. (Tr. 357).

    Aleman had his first post surgery clinic appointment with Dr. Schmitt at the Neurosurgery Spine Clinic on April 21, 2016. (Tr. 370-373, 411-413). The treatment note states that Aleman had "no neurological complaints." The results of his examination show that he had a normal bulk; normal tone in upper and lower extremities bilaterally' no fasciculation; effort appeared normal; motor results were 5/5 in all four extremities; sensory was normal to light touch in all four extremities, he had normal gait and station; and extremities were likewise normal. Based on the examination results, Dr. Schmitt opined: "he is going well but will have to wear his collar for a total of 3 months. He cannot work or lift because of this. I will see him back in 9 more weeks with x-rays. At that time I hope to [discontinue] his cervical collar and possibly even let him return to work...."(Tr. 371, 412).

    An x-ray of the cervical spine taken on July 7, 2016, revealed that it was "unchanged,

satisfactory appearance of posterior spinal fusion hardware at C6-C7." (Tr. 366, 382, 405). Clinic notes from Aleman's July 13, 2016, appointment with Dr. Schmitt indicate that Aleman reported that he was doing well. In addition, the July 7, 2016, x-rays confirmed no changes. His gait was normal, his neurological examination results were normal. His muscle strength was 5/5 in the upper extremities, bilaterally. Based on the examination and diagnostic image, Dr. Schmitt opined that Aleman was "doing well three months post C6-C7 PSF. Cervical spine x-rays today show good position of C6-C7 fx. Hardware in good position."

Aleman had a three month follow up appointment with Dr. Schmitt on October 13, 2016. (Tr. 388). In connection with this visit he had a CT of the cervical spine, which showed: "1. Interval resolution of the postsurgical subcutaneous emphysema. 2. Stable stabilization of the left C6/C7 fracture fixation along with left laminar and right posterior stabilization rods." (Tr. 384, 394). Dr. Schmitt noted that Aleman, unlike his prior visits, reported neck pain. Examination results showed normal gait. His muscle strength measured 5/5 bilaterally in all extremities. Unlike his earlier visit, Aleman had decreased sensation, left hand finger. Based on the CT result, and examination findings, Dr. Schmitt wrote: "Mr. Aleman id doing well post C6-C7 posterior spinal fusion. CT cervical spine today shows that he is well healed and fused at C6-C7. He is released [to return to work] with no restrictions." *Id.*

In connection with his applications for DIB and SSI, Aleman was referred to Raymond Alexander, M.D. for an evaluation. Dr. Alexander's February 7, 2017, report (Tr. 459-462) describes Aleman's complaints as follows:

> He still complains of pain in his neck and upper back. He also has some pain in his left arm. He is right-handed. He feels some numbness and tingling in the tips of his fingers on his left hand. He also feels tingling in his toes....He says he is unable to lift greater than 10 pounds at the most with the left upper extremity. He is able to use his right upper extremity adequately. ...He has trouble reaching and grasping with his left hand. (Tr. 459).

Results of Aleman's examination reveal the following:

**Neck**
Supple.  There is a surgical scar in the posterior neck which is 7.5 cm in length.
There is mild tenderness in the left paracervical muscles and the trapezius muscle.
There is no atrophy of these muscles.  Range of motion: Flexion is 50 degrees,
extension 50 degrees, rotation to the right 40 degrees and to the left 40 degrees,
lateral flexion to the right 25 degrees and to the left 25 degrees.

**Musculoskeletal Exam**
There is tenderness in the left shoulder area and the left scapular area.  There is no
redness, warmth or swelling of the shoulder.  There is no deformity in this area.
Range of motion of the left shoulder shows flexion of 100 degrees, extension 40
degrees, abduction 120 degrees, abduction 40 degrees, internal rotation 60 degrees,
and external rotation 80 degrees.  There is tenderness in the lower lumbar area in the
soft tissues on the right side.  There is no point tenderness or deformity.  Straight leg
raising is negative bilaterally.  Flexion is done to 90 degrees, extension 20 degrees,
and lateral flexion 25 degrees to the right and 25 degrees to the left.

**Neurological Exam**
Cranial nerves II through Xii are intact.  Motor is intact.  Sensory: There is altered
sensation in the left second and third fingers.  Sensation is intact for light touch and
pain, however.  Deep tendon reflexes are 2+ and symmetrical.  Gait is normal.
Tandem gait is normal.  He walks on his heels without difficulty.  He walks on his
toes without difficulty.  He squats without difficulty.  He hops without difficulty.

**Vascular**
No. Cyanosis, clubbing or edema.

**Psychosocial**
Unremarkable.

Based on his examination, Dr. Alexander opined:

**Impression**

1. Status post fracture of the cervical spine with cervical reconstruction and fusion.
2. Left shoulder and arm discomfort and upper back discomfort, possibly due to
neuropraxia in the cervical spine.  There are no findings of radiculopathy, nor any
gait impairment.

**Functional Capacity**

Based upon the current evidence obtained during this examination, this claimant is
able to sit, stand, and move about; lift, carry and handle objects; and hear and speak.
He does complain of some continuing neck pain and left arm symptoms.  He does not

have atrophy, motor, sensory or reflex abnormalities in a radicular distribution and does not have evidence radiculopathy.  Range of motion of the spine is given above in the report.  His gait was normal.  He had no difficulty in heel or toe walking, squatting, hopping or tandem walking.  His grip strength was normal.  His ability to reach, handle, finger and feel is not affected.  His visual acuity with the Snellen chart is given above.  (Tr. 460-461).

A treatment note from Jennifer Farrell, D.O., with Pearland Physicians, reveals that at a June 21, 2017, office visit neurologically, Aleman was alert, and his gait intact.  His muscle strength was 5/5 on the right arm but 4/5 on the left.  Deep tendon reflexes of biceps/triceps were 2+.  Aleman also had "left hand thenar atrophy, mild atrophy of left forearm.'  (Tr. 517).  Based on these results, Dr. Farrell diagnosed cervicalgia and cervical radiculitis.  *Id.*

Records from Aleman's treating physician Shahbuddin H. Mukardamwala, M.D., reveal that Aleman, at his initial office visit on March 9, 2018, complained of neck pain, which radiates down his shoulders, mainly on the left and of upper extremity numbness to 1, 2, 3rd fingers that sometimes burns.  (Tr. 489).   Examination results reveal that Aleman had a full range of motion.  (Tr. 490).  Neurologically, his mental status results were normal.  As for his cranial nerves, he was "able to raise shoulders and turn head to sides against resistance." His gait and station were within normal limits.  His reflexes were 2+ symmetric throughout, Hoffman's sign was negative.  No problems were observed with coordination.  As for motor strength, the results show "left deltoid 5-, triceps 5-, left APB 4-, mild atrophy of left deltoid, triceps, biceps, forearm muscles."  (Tr. 490).  Lastly, his sensory exam was normal except for "decreased sensation to left 1, 2, and 3rd digit." (Tr. 490).  Based on the clinical examination findings, Dr. Mukardamwala diagnosed Aleman as having radiculopathy, cervical region and migraine without aura, not intractable, with status migrainosus." (Tr. 490).  Dr. Mukardamwala prescribed Gabapentin.

Aleman had a follow up office visit with Dr. Mukardamwala on March 23, 2018.  (Tr. 487-488).  Aleman reported that he was "doing much better" with his headaches.  However, he reported

neck stiffness and numbness in his left arm. (Tr. 487). Examination results were unchanged from his March 9, 2018, office visit. Dr. Murkardamwala instructed Aleman to take Gabapentin three times a day, instead of twice daily, for migraine relief, and now for nerve pain relief.

The record reflects that Aleman had a four week follow-up appointment on April 27, 2018. (Tr. 485-486). Aleman continued to complain of neck pain and feeling that something pinches. Examination results were unchanged. Dr. Mukardamwala doubled the dose of Gabepentin. He ordered an MRI of the cervical spine. (Tr. 486).

Aleman underwent the MRI on May 17, 2018. (Tr. 510-511). The radiologist opined:

1. C3-4 minimal central stenosis with moderate left foraminal stenosis

2. C4-C5 minimal central stenosis with moderate bilateral foraminal stenosis

3. Limited hardware evaluation secondary to blooming artifact.

Aleman argues that the ALJ erred in finding that he did not meet or equal Listing 1.04A. The Commissioner counters that the ALJ properly determined that Aleman did not meet or equal Listing 1.04A and that substantial evidence supports this determination.

At step 3, the ALJ must determine whether the claimant's impairment(s) matches, or is equivalent to, one of the listed impairments. The listings describe impairments that prevent the claimant from performing any substantial gainful activity, without consideration of a claimant's age, education and work experience. 20 C.F.R. § 404.1520(d). The ALJ has the burden to identify the relevant listed impairment. Whether a claimant's impairment meets the criteria of a listed impairment is usually more a question of medical fact than opinion because most of the criteria are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence in the

record about such impairment, including findings from medical sources.  20 C.F.R. § 404.1526(c).

Medical equivalence is found when an impairment "is at least equal in severity and duration to the

criteria of any listed impairment.  *Id.* 404.1526(a)

The claimant has the burden at step 3 of proving that an impairment meets or equals a listing.

"For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the

specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990(emphasis in original).

An ALJ may not state a summary conclusion that a claimant's impairments do not meet or equal an

impairment in the Listing especially where the ALJ's discussion of the medical evidence in

formulating plaintiff's RFC points to medical records that potentially prove aspects of the criteria

of a listing.

Listing 1.04 provides for presumptive disability for spinal disorders, stating that a claimant

will be found disabled if he has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda equina) or the spinal
> cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or reflex loss and, if there
> is involvement of the lower back, positive straight-leg raising test (sitting and
> supine); or
>
> B.  Spinal arachnoidities, confirmed by an operative note or pathology report of
> tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe
> burning or painful dysesthesia, resulting in the need for changes in position or
> posture more than every 2 hours; or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings
> on appropriate medically acceptable imaging, manifested by chronic nonradicular
> pain and weakness, and resulting in the inability to ambulate effectively....

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.  "These physical findings must be determined on the

basis of objective observation during the examination and not simply a report of the individual's allegation..." § 1.00D. The claimant must also demonstrate that he met the listing criteria for a period that lasted or is expected to last at least twelve months. *Woods v. Colvin*, No. 3:14-cv-1990-B-BH, 2015 WL 5311142, at *12 (N.D. Tex. 2015), adopted by 2015 WL 5319926 (2015); 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2). "To demonstrate the required loss of function for a musculoskeletal impairment, the claimant must demonstrate either an inability to ambulate effectively on a sustained basis . . ., or the inability to perform fine and gross movements effectively on a sustained basis." *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007).

Here, with respect to the listing, the ALJ wrote, in pertinent part:

The claimant's post-surgical cervical spine disorder is considered under listing 1.04, which allows for presumptive disability when an individual meets the requirements of parts A, B, or C. Part A requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raise test. Part B requires evidence of spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours. Finally, Part C requires lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in an ability to ambulate effectively, as defined in section 1.00B2b.

The claimant's post-surgical cervical spine disorder fails to meet the criteria of listing 1.04, in that there is no compromise of a nerve root or the spinal cord. Nor is there any evidence of a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss, and there is no positive straight-leg raise test. There is no spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. The claimant does not have lumbar spinal stenosis resulting in pseudo-claudication, established by finding on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in section 1.00B2b.

In March 2016, the claimant had a posterior spinal fusion of the cervical spine, and the CT scan showed a satisfactory appearance of internal fixation of the left C6-C7 fracture with left laminar hook and right posterior stabilization rods (Exhibit 2F/5 and 17). Three months post surgery, July 2016 x-rays of the claimant's cervical spine showed an unchanged, satisfactory appearance of the posterior spinal fusion hardware at C6-C7 (Exhibits 2F/32, 4F/5, and 5F/20). Dr. Schmitt observed that the claimant's gait was normal, and his muscle strength was 5/5 in his bilateral upper extremities (Exhibits 3F/9 and 5F/18). A September 2016 CT scan of the claimant's cervical spine showed stable stabilization of the left C6-C7 fracture fixation along with left laminar and right posterior stabilization rods (Exhibits 4F/7 and 5F/9). Dr. Schmitt noted that the claimant's cervical spine was well-healed (Exhibit 5F/3). At an April 2018 office visit, Dr. Mukardamwala observed that the claimant had mild atrophy of his left deltoid, triceps, biceps, and forearm muscles (Exhibit 8F/2). Dr. Mukardamwala also observed that the claimant' neck had a full range of motion (Exhibit 8F/2). Dr. Mukardamwala also observed that he was able to raise his shoulders and turn his head to the sides against resistance (Exhibit 8F/3). There is no evidence that the claimant has a limitation in his upper extremity that would require changes in position or posture more than once every two hours. (Tr. 19-20).

Aleman argues that the ALJ erred by merely listing the requirements of the listing and concluding that he did not meet or equal the listing. Aleman contends he has been prejudiced by the failure of the ALJ to properly consider his allegations under Listing 1.04A, and the reasons why he did not meet that listing. He further argues that the ALJ erred in relying on the absence of a positive straight leg raising test because the listing expressly states that it is not required for a cervical impairment. Aleman points to the medical findings that he suffers from nerve root compression. He cites to multiple diagnosis of radiculopathy, pain from his neck running down his left arm to three digits, atrophy in his left arm, decreased sensation, and limited range of motion of the cervical spine, as documented in the longitudinal treatment records from his last visit with Dr. Schmitt, Dr. Farrell on June 21, 2017, Dr. Mukardamwala's treatment notes, the most recent MRI of the cervical spine, and evaluation of Dr. Alexander, indicating left shoulder and arm disconfort and upper back discomfort, possibly due to neuropraxia in the cervical spine. The Commissioner counters that while Aleman may have some of the necessary positive findings on occasion, he does

not continuously meet all five requirements, and in any event, any error was harmless.

"1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present. Listing 1.04A uses the conjunction "and" when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination." Social Security Acquiescence Ruling (AR) 15-1(4)*, Radford v. Colvin: Standard for Meeting The Listing For Disorders Of The Spine With Evidence Of Nerve Root Compression*, 2015 WL 5697481, at *4.

Here, the ALJ provided no explanation as to how she concluded that Aleman's symptoms did not meet or equal Listing 1.04, much less 1.04A. To the extent the ALJ relied on the lack of evidence of positive straight leg raise testing, listing 1.04A does not require a positive straight leg raise test for cervical impairments. The Commissioner argues that any error was harmless. The Magistrate Judge disagrees.

The Fifth Circuit adheres to the view that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)(quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 Fed. Appx. 719, 722 (5th Cir. 2011). An error an harmless if the substantial rights of a party have not been affected. *Id.* Upon this record, Aleman has pointed to evidence that supports his argument that he meets or equals listing 1.04A. The ALJ's statement that Aleman did not meet or equal the listing by merely citing the requirements of the listing, even if true, is insufficient to support a finding that Aleman's cervical spine disorder did not meet or equal listing 1.04A. The ALJ's cursory analysis does not permit the

Court to understand *how* she assessed the evidence.  Because the ALJ failed to properly analyze

Listing 1.04A at step 3 of the five step sequential evaluation process, and the error was not harmless,

the matter must be remanded.  Moreover, to the extent that Aleman's symptoms of neck pain,

shoulder pain, and left arm pain, including left arm atrophy, left hand thenar atrophy, and loss of

sensation in three left hand fingers, and tingling, as documented in the records from Aleman's last

visit with Dr. Schmitt on October 13, 2016,  Dr. Alexander suggesting "left shoulder arm discomfort

and upper back discomfort, possibly due to neuropraxia in cervical spine," Dr. Farrell's treatment

note, and Dr. Mukardamwala's treatment records, and the May 17, 2018, cervical MRI results,

which suggest either a change in Aleman's condition, or a new  impairment not related to the

cervical fusion surgery, such an impairment should be considered at Step two.

 RFC is the most the claimant can still do despite her impairments and any related symptoms.

20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC determination is "the sole responsibility of

the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). "It is the responsibility of the ALJ

to interpret 'the medical evidence to determine [a claimant's] capacity for work."  *Fontenot v.

Colvin*, 661 Fed. Appx 274, 277 (5th Cir. 2016)(quoting *Taylor*, 706 F.3d at 603)).  As such "the

ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh

their opinions and testimony accordingly."  *Id.*  In formulating a claimant's RFC, the ALJ considers

"all of the relevant evidence in the case record", i.e, "medical history, medical signs, and laboratory

findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations,

and work evaluations." *Eastham v. Comm'r of Soc. Admin*, No. 3:10-CV-2001-L, 2012 WL 691893,

at *6 (N.D. Tex. Feb. 17, 2012 (citing 96-8p).   "[T]he ALJ must discuss the claimant's ability to

perform sustained work activity on a regular and continuing basis and resolve any inconsistencies

in the evidence." *Ewing v. Colvin*, No. 4:13-CV-85-A, 2014 WL 2464765, at *4 (N.D.Tex. June 2,

2014).  The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported by the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  Likewise, the ALJ is not required to expressly state in the RFC the limitations on which it is based.  *Bordelon v. Astrue*, 281 Fed. Appx 418, 422-423 (5th Cir. 2008).  The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity and no information in the record indicates that such a limitation or restriction exists.  *See SSR* 96-8p, 1996 WL 374184, at *1.  The regulations provide that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."  SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 1, 1996).  Paragraphs (b), (c), and (d) relate to physical, mental, and other abilities.  The ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R.§ 404.1545(d).  When assessing physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions.  *Id.* § 404.1545(b).

Finally, under Social Security Ruling 00-4p, an ALJ has an affirmative duty to "fully and fairly develop the facts relative to a claim for disability benefits."  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  When the ALJ fails in this duty, she does not have before her sufficient facts upon which to make an informed decision, and her decision is not supported by substantial evidence.  *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).  The claimant must demonstrate that the ALJ's failure to fully and fairly develop the record was harmful error.  *Id.*  Simply put, the claimant must show that he could have and would have "adduced evidence that might have altered the result."  *Kane v. Heckler*, 731 F.2d 1216 (5th Cir. 1984).  Because the record shows Aleman has  loss of

sensation in three left fingers and atrophy, further development of the record is necessary to consider the effects Aleman's cervical spine disorder has on his ability to reach, handle, finger, feel, and lift with his left upper extremity. The evidence describing Aleman's impairment is insufficient to support the ALJ's RFC determination.  Had the ALJ obtained a medical source opinion regarding the effects that Aleman's cervical spine had on his ability to use his left arm and hand, to reach, handle, finger, feel and lift, she might have imposed greater restrictions in her RFC assessment.  And if the ALJ had tracked that RFC in her hypothetical to the VE, a different conclusion might have been reached regarding Aleman's ability to perform the jobs identified by the VE.  As such, the ALJ's RFC assessment cannot be said to be supported by substantial evidence, and remand is required because the ALJ's failure to develop the record prejudiced Aleman.

## V.  Conclusion

Based on the foregoing, and the conclusion that the ALJ erred by failing to consider Aleman's cervical impairment at step three, to consider any change the left shoulder and left arm at step two, and in formulating his RFC, further development of the record is necessary, the Magistrate Judge

ORDERS that Defendant's Motion for Summary Judgment (Document No.11), is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED and that this case is REMANDED to the Social Security Administration pursuant to Sentence four of 42 U.S.C. §405(g), for further proceedings consistent with this Memorandum and Order

Signed at Houston, Texas, this 15th day of March, 2021

Frances H. Stacy
United States Magistrate Judge